Cindy HOGAN–CROSS, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, et ano., Defendants.

No. 08 Civ. 0012(LAK).

United States District Court, S.D. New York.

July 31, 2008.

Justin Corey Frankel, Jason A. Newfield, Frankel & Newfield, P.C., for Plaintiff.

Allan Michael Marcus, Lester, Schwab, Katz and Dwyer LLP, for Defendants.

## MEMORANDUM OPINION

LEWIS A. KAPLAN, District Judge.

This is an action to recover benefits under an ERISA plan from defendant Metropolitan Life Insurance Company ("MetLife"). Plaintiff moved to compel discovery. As often has been the case, the defendants resisted any material disclosure, contending that review of its termination of benefits is measured by the arbitrary and capricious standard and, moreover, that such review is confined to the administrative file. To the extremely limited extent that MetLife addressed the relevance of particular discovery requests,[1] it contended only that interrogatories 14 and 15 and document request 14 were "mainly irrelevant to 'exploring' conflict of interest" and passed quickly to its contention that plaintiff had failed to show that the administrative record was inadequate for the purpose of determining "how a conflict of interest actually influenced MetLife's claim determination." By order dated July 3, 2008, the Court granted plaintiff's motion to compel in significant measure. MetLife now moves for reconsideration of that ruling in significant measure.

*Timeliness*

■ MetLife first sought reconsideration by electronically filing, on July 18, 2008, a letter seeking that relief. But Section 13.1 of this Court's Electronic Case Filing Rules and Instructions prohibits the electronic filing of letters. Accordingly, the Clerk rejected the letter. On July 21, 2008, MetLife filed the motion to reconsider that now is before the Court.

S.D.N.Y. Civ. R. 6.3 requires that a motion for reconsideration be filed no later than 10 days after the date of entry of the order in question. As the period in question is less than 11 days, the July Fourth holiday and intervening weekend days are excluded.[2] Accordingly, the last day on which to file a motion for reconsideration was July 18, 2008. While defendants attempted to file on that date, their filing was ineffective in light of the fact that the Clerk properly rejected the filing because it contravened the rules.

The prohibition of the electronic filing of letters is a carefully considered policy of this Court that serves important purposes. Such communications often are erroneously docketed as motions (although that was not the case here), thus creating difficulties for the Court's ability to track and account for motions. They also burden the docket and the associated electronic storage facilities with unnecessary material. Moreover, the prohibition on electronic filing of letters has been well publicized to the Bar for years, as it appears in written materials disseminated by the Clerk's Office and has been posted on the Court's web site for a long time. Accordingly, the Court is reluctant to relieve MetLife of the consequences of missing the deadline as a result of its failure to comply with such a well-publicized policy. Nonetheless, the Court will treat the present motion as timely notwithstanding this failure *in this instance*. It will not do so in the future

---

1. *See* DI 33, at 3.

2. Fed.R.Civ.P. 6(a).

for MetLife or for its attorneys, whether in this or other cases.

*The Standard*

██ Relief is available under Local Civil Rule 6.3 only if the movant demonstrates that the " 'Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion.' " [3] Such a motion " 'may not advance new facts, issues or arguments not previously presented to the court.' " [4] Indeed, as our former Chief Judge Mukasey has written, a party seeking reconsideration "is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." [5]

*Discussion*

1. MetLife first disputes the ruling with respect to document requests 14 and 28–30, interrogatories 14–16, and deposition topics 4 and 6 on the grounds that the time period covered is overbroad and that they do not seek relevant information because "they have nothing to do with conflict of interest."

██ As an initial matter, the Court declines to reconsider either the time period or other aspects of its ruling on these requests save that part which related to document request 14 and interrogatories 14 and 15 because the arguments now made were not advanced in MetLife's opposition to the motion to compel. MetLife's only objection to the other discovery requests was the bald assertion that depositions and broad discovery inquiries are not permitted "when there is no evidence in the administrative record of any actual conflict." [6] Having declined to challenge on the original motion the relevance of plaintiff's specific requests if, contrary to its argument, discovery is permissible even assuming there is no evidence in the administrative record of any conflict, MetLife will not be heard to do so now. In any case, even if the Court were disposed to entertain reargument as to these requests, MetLife would fare no better.

In *Metropolitan Life Insurance Co. v. Glenn,* [7] the Supreme Court held that "a plan administrator [that] both evaluates claims for benefits and pays benefits"—precisely MetLife's position here—has a conflict of interest for ERISA purposes. [8] It further made clear that the existence of such a conflict is a factor to be weighed by a court when reviewing the denial of benefits, the significance of which will vary depending upon other circumstances. [9] Moreover, the Court made clear its view

---

**3.** *Auscape Int'l v. Nat'l Geographic Soc'y,* No. 02 Civ. 6441(LAK)(HBP), 2003 WL 22127011, at *1 (S.D.N.Y.Sept.15, 2003) (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.,* 163 F.R.D. 211, 213 (S.D.N.Y.1995), *rev'd on other grounds,* 92 F.3d 57 (2d Cir.1996)).

**4.** *Id.* at *1 (quoting *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.,* 850 F.Supp. 1105, 1151 (S.D.N.Y.1994)). *Accord In re Laser Arms Corp. Sec. Litig.,* No. 86 Civ. 3591(JMC), 1990 U.S. Dist. LEXIS 349, at *3–4 (S.D.N.Y. Jan. 17, 1990) (citing *Weissman v. Fruchtman,* 124 F.R.D. 559, 560 (S.D.N.Y. 1989)); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* No. 86 Civ. 6447(JMC), 1989 WL 162315, at *4 (S.D.N.Y. Aug.4, 1989),

*rev'd on other grounds,* 967 F.2d 742 (2d Cir. 1992).

**5.** *Polsby v. St. Martin's Press, Inc.,* No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan.18, 2000) (quotation marks and citation omitted).

**6.** DI 33, at 2.

**7.** —— U.S. ——, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

**8.** *Id.* at 2348–50.

**9.** *Id.* at 2350–52.

that it is neither "necessary [n]or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict."[10] Accordingly, MetLife's notion that discovery is inappropriate in this case because "there is no evidence in the administrative record of any actual conflict," a dubious proposition to begin with before *Glenn*,[11] is misguided. The question here, as in all cases, is whether the discovery sought is relevant in itself or "appears reasonably calculated to lead to the discovery of admissible evidence."[12]

█ The requests at issue here seek evidence concerning approval and termination rates for IBM long term disability claims and statistics regarding long term disability claims administered by MetLife in litigation. To be sure, evidence of high rates of denial and termination of claims, in and of themselves, would prove little or nothing. High rates of denial might reflect only that high proportions of such claims were not meritorious. High rates of termination might reflect only that high proportions of persons who initially were granted disability benefits improved over time and ceased to be eligible for benefits. But that is not to say that evidence of rates of claim denials and benefit terminations would not be reasonably calculated to lead to the discovery of admissible evidence. Evidence of high rates of benefit denials or terminations reasonably could lead to further inquiry as to the reasons for those actions, which might prove either benign or malignant. Accordingly, even if the Court were to grant reconsideration with respect to these requests, it would adhere to its former decision.

█ 2. MetLife next challenges the ruling insofar as it applied to document request 12 and interrogatories 5, 6, and 17. Broadly speaking, those requests, to the extent enforced by the Court, seek information regarding the compensation of "persons involved in evaluating, advising upon, or determining plaintiff's eligibility for continued benefits." MetLife contends the information in question is not relevant.

The bases for and amounts of compensation paid to employees and outside consultants involved in plaintiff's benefit termination itself could prove relevant to plaintiff's claim. Certainly it could lead to other relevant evidence. It could matter a great deal, for example, if an outside reviewer derived all or most of his or her income from MetLife, particularly if that reviewer frequently recommended denial or termination of benefits.

MetLife relies upon *Abromitis v. Continental Casualty Co.*[13] for the proposition that compensation of an outside consultant is not relevant where the consultant was not the decision-maker. But *Abromitis* is not helpful, particularly in light of *Glenn.* It rested in the first instance on the Fourth Circuit's pre-*Glenn* view that discovery was seldom permissible where the scope of review is the arbitrary and capricious standard. It then relied upon district court cases that concluded that where, as here, a conflict of interest is apparent on the record, discovery as to the extent of the conflict is inappropriate.

---

10. *Id.* at 2351.

11. *See, e.g., Trussel v. Cigna Life Ins. Co. of New York*, 552 F.Supp.2d 387, 389–91 (S.D.N.Y.2008); *Pelosi v. Schwab Capital Mkts., L.P.*, 462 F.Supp.2d 503, 510 (S.D.N.Y. 2006).

12. FED.R.CIV.P. 26(b)(1).

13. 261 F.Supp.2d 388 (W.D.N.C.2003), *aff'd without consideration of the point*, 114 Fed. Appx. 57 (4th Cir.2004).

This view would not have been persuasive to this Court even before *Glenn*. The ultimate question in these cases is whether the decision in question was arbitrary and capricious. In making that determination, the existence, nature, extent, and effect of any conflict of interest are relevant considerations. A consultant may be compensated in a manner and/or to an extent that creates a motive to recommend against the payment of benefits because such recommendations are believed to serve the interests of the plan administrator. If a decision maker knowingly were to rely on advice from such a consultant, it would be only common sense to say that the decision would command less deference than one made on the basis of unbiased advice or in ignorance of the bias. The categorical or nearly categorical view of *Abromitis* and the cases upon which it relied—that discovery is seldom if ever permissible in these cases, at least if the existence of the conflict inherent in the plan administrator both determining claims and paying benefits is apparent on the record—thus is blind to potentially important information that, at least in some cases, may be critical to the fair and informed review of benefit claims.

Were there any doubt about this, *Glenn* removed it. It rejected special procedural or evidentiary rules and, in this Court's view, thus abrogated the limitations on discovery unique to ERISA cases that were imposed or applied by such cases as *Abromitis*. Moreover, it provided significant guidance for this case in its comments concerning the manner in which conflicts of interest are to be considered in such cases. It wrote:

"In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. [Citation omitted] It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." [14]

Thus, the Court made clear that not all conflicts are created equal. Their significance in any given case depends upon all of the circumstances, including those suggesting a higher or lower likelihood that the conflict affected the decision. Information bearing on the manner in which a conflicted plan administrator compensates outside consultants could be highly pertinent. Maintenance of compensation arrangements that create economic incentives for consultants to recommend denial or termination of benefits would have a material bearing on the likelihood that the administrator's conflict affects its benefit determinations.

3. The Court has considered MetLife's other arguments. Even if it were disposed to grant reconsideration, which it is not, it would conclude that they are without merit.

*Conclusion*

No one denies that speedy, simple, and inexpensive determination of actions seeking review of benefit determinations is de-

---

**14.** *Glenn,* 128 S.Ct. at 2351.

sirable. Eliminating or sharply limiting discovery would serve that goal. But that is not the only goal. Congress enacted ERISA to provide unsuccessful claimants with a federal forum for the fair determination of their claims.[15] Pretrial discovery is a part of the process for which Congress opted.

This of course does not mean that limitless, pointless, and needlessly expensive discovery will be a part of every case seeking review of an ERISA benefit determination. Far from it. The Federal Rules of Civil Procedure presumptively limit depositions and interrogatories in all civil cases,[16] and they give district judges ample bases for imposing further limitations.[17] But each case must be considered on its own merits. Blunderbuss attempts to cut off discovery on the ground that it never or rarely should be permitted in these cases, whatever their merits before *Glenn*, no longer have merit.

Defendants' motion for reconsideration [docket item 37] is denied in all respects. Even if reconsideration were granted, the Court would adhere to its original decision.

SO ORDERED.

---

**15.** *See, e.g., Bird v. Shearson Lehman/Am. Express, Inc.,* 926 F.2d 116, 120 (2d Cir.) ("We are aware that one of the means by which Congress sought 'to protect ... participants in employee benefit plans and their beneficiaries' was 'by providing ... ready access to the Federal courts.'") (quoting 29 U.S.C. § 1001(b)), *cert. denied* 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991).

**16.** Fed.R.Civ.P. 30(a)(2), 33(a)(1).

**17.** *Id.* 26(b)(2)(A), 26(b)(2)(C), 26(c).